UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARY I. McKINLEY, | : | |
| | : | NO. 1:11-CV-344 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION & ORDER** |
| SKYLINE CHILI, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 17), Plaintiff's Response (doc. 26), and
Defendant's Reply (doc. 28).  For the reasons indicated herein, the
Court GRANTS the Defendant's motion.

**I. BACKGROUND**

On July 21, 2011, Plaintiff Mary McKinley filed an
Amended Complaint raising numerous federal and state claims arising
from the termination of her employment with Skyline Chili, Inc.
("Defendant") (doc. 10).

Plaintiff, a female born in 1954, began working for
Defendant in March 2006 as a District Manager (doc. 10).  In 2008,
after receiving two positive yearly reviews, Plaintiff was promoted
to Market Manager, the first for the Cincinnati Market (doc. 17,
doc. 20).  The Market Manager position involved a pay increase,
higher bonus potential, and broader responsibilities compared to
the District Manager position (Id.).  In April of 2009, Jay
Swallow, who served as District Manager for the Dayton market
during Plaintiff's tenure as a District Manager in Cincinnati, was

also promoted to the position of Market Manager, for the Dayton area (doc. 17, doc. 26).

Beginning in 2008, Plaintiff's supervisor Debbie Chitwood began to raise concerns regarding Plaintiff's performance (doc. 17). Specifically, as a Market Manager in 2008, Plaintiff received a written annual performance review that included concerns over response times to customer complaints (Id.). In April 2009, Ms. Chitwood wrote an email to Plaintiff addressing concerns over Plaintiff's follow-up with customer complaints (Id.). According to Ms. Chitwood, Plaintiff was "off her performance target and was struggling with her Market Manager role" in April 2009 (Id., doc. 19). In December of 2009, Plaintiff received a negative written annual performance review, that stated specifically, "[Plaintiff] has struggled in her leadership effectiveness as the Market Manager this past year. . . "(doc. 17). Ms. Chitwood continued to have concerns over Plaintiff's job performance through May of 2010, and on May 25, Ms. Chitwood met with Plaintiff and gave her a letter outlining a number of those concerns (Id.).

After receiving the letter, Plaintiff complained to Shari Bleuer, Director of Human Resources for Skyline Chili, approximately two days later (doc. 26). Plaintiff claims to have mentioned she felt discriminated against and that "all of [her] team members were significantly younger and some [were] male" (doc. 26).

In November of 2010, after serving as Market Manager for

the Dayton Market, Mr. Jay Swallow was promoted to Director of Operations over the Cincinnati and Dayton markets (doc. 17). Plaintiff was then "reporting directly" to Mr. Swallow (<u>Id</u>.).  Soon after receiving "feedback" from Mr. Swallow, Ms. Chitwood terminated plaintiff on December 1, 2010 in a termination letter dated November 30, 2010 (<u>Id</u>.).  The letter noted that the termination was the "result of a number of ongoing performance issues," including "erosion of Plaintiff's leadership acumen" and "lack of communication or misconduct." (<u>Id</u>.).

Plaintiff alleges that her employment was improperly terminated by Defendant and claims: (1) Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) Age Discrimination under Ohio Revised Code Chapter 4112; (3) Gender Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII") (4) Gender discrimination in violation of Ohio Revised Code Chapter 4112; (5) Retaliation in violation of the ADEA and Title VII; (6) Retaliation in violation of Ohio Revised Code Chapter 4112; and (7) Retaliation and Interference under the Family Medical Leave Act ("FMLA").[1]

On April 1, 2012, Defendant filed a Motion for Summary Judgment on Plaintiff's Claims (doc. 17).  Oral arguments were heard from both parties on May 25, 2012.  For the following reasons, Defendant's motion will be GRANTED.

---

[1] As Defendant noted in oral argument, Plaintiff has abandoned its FMLA claim (7) and therefore the Court will not address it further.

## II. STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]"

-4-

_Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986); see also
_LaPointe_, 8 F.3d at 378; _Guarino v. Brookfield Township Trustees_,
980 F.2d 399, 405 (6th Cir. 1992); _Street v. J.C. Bradford & Co._,
886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by
merely identifying that the non-moving party lacks evidence to
support an essential element of its case. See _Barnhart v. Pickrel,
Schaeffer & Ebeling Co., L.P.A._, 12 F.3d 1382, 1389 (6th Cir.
1993).

     Faced with such a motion, the non-movant, after
completion of sufficient discovery, must submit evidence in support
of any material element of a claim or defense at issue in the
motion on which it would bear the burden of proof at trial, even if
the moving party has not submitted evidence to negate the existence
of that material fact. See _Celotex_, 477 U.S. 317; _Anderson v.
Liberty Lobby, Inc._, 477 U.S. 242 (1986). As the "requirement [of
the Rule] is that there be no genuine issue of _material_ fact," an
"alleged factual dispute between the parties" as to some ancillary
matter "will not defeat an otherwise properly supported motion for
summary judgment." _Anderson_, 477 U.S. at 247-48 (emphasis added);
see generally _Booker v. Brown & Williamson Tobacco Co., Inc._, 879
F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere
existence of a scintilla of evidence in support of the [non-
movant's] position will be insufficient; there must be evidence on
which the jury could reasonably find for the [non-movant]." 
_Anderson_, 477 U.S. at 252; see also _Gregory v. Hunt_, 24 F.3d 781,

784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of his claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at

-6-

587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III. Discussion

### A. Plaintiff's State and Federal Age Discrimination Claims

The Age Discrimination in Employment Act of 1967 ("ADEA") as amended, 29 U.S.C. § 623(a),[2] prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  Plaintiffs may use either direct or circumstantial evidence to prove unlawful discrimination but, regardless of the type of evidence presented, the burden of persuasion remains at all times with the plaintiff to demonstrate that "age was the 'but-for' cause of the challenged. . . action."  Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009).

_____

[2] Plaintiff also alleges violations of Ohio's age-discrimination laws, O.R.C. § 4112.  Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis. See McLaurin v. Fischer, 768 F.2d 98, 105 (6th Cir.1985) (citing Barker v. Scovill, Inc., 6 Ohio St.3d 146, 451 N.E.2d 807, 808 (1983)).  See also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir. 1998).  Therefore, the Court applies the same analytical framework to Plaintiff's state-law age-discrimination claims as it does for the ADEA-based claims, and the Court's resolution of Plaintiff's ADEA-based claims likewise resolves Plaintiff's state-law age-discrimination claims.  See, e.g., Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008)(applying analysis under federal Americans with Disabilities Act to Ohio's disability discrimination statute to resolve both claims).

### 1. __Prima__ __Facie__ Case

An employee seeking to establish a __prima__ __facie__ case of age discrimination must show (1) that he or she was forty-years or older at the time of his or her dismissal; (2) that he or she was subjected to adverse employment action; (3) that he or she was qualified for the position; and (4) that he or she was replaced by a younger person. McDonald v. Union Camp, 898 F.2d 1155, 1160 (6th Cir. 1990). __See__ __also__ McDonnell Douglas Corp. v. Green, 441 U.S. 792, 802 (1973). Whether or not Plaintiff meets the third "qualified for the position" prong is the only aspect of Plaintiff's __prima__ __facie__ case that the parties dispute.

Citing McDonald v. Union Camp, Defendant argues that Plaintiff was not qualified for her position because she failed to meet its legitimate expectations (doc. 17, citing 898 F.2d at 1160). Specifically, Defendant points to Plaintiff's negative performance review of 2009, documentation in her personnel file regarding her poor performance, the May 25, 2010 written warning, and the termination letter of November 30, 2010, all of which, according to Defendant, show that Plaintiff failed to meet Defendant's expectations regarding, for example, leadership and sales and profitability (Id.). For further support for this argument that the Court should look to Defendant's assessment of Plaintiff's performance for guidance on whether she was qualified for her position, Defendant points the Court to Demasellis v. St. Mary's of Michigan, No. 10-12138-BC (E.D. Mich. 2011) and Smith v.

-8-

Appalachian Regional Healthcare, Inc., No. 07-166-ART (E.D. Ky. 2009), which, Defendant asserts, are examples of courts finding that the failure to meet a defendant's legitimate expectations means that, as a matter of law, the plaintiff should be found unqualified (doc. 28).

      In contrast, Plaintiff argues that, in order to determine whether she has shown the she is qualified for the purposes of making her prima facie case, the Court should look only to Plaintiff's objective qualifications—e.g., her education, experience in the industry, and possession of the requisite general skills (doc. 26, citing Wexler v. White's Fine Furniture, Inc., 317 F.3d. 564 (6th Cir. 2003) and Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 1999)). Plaintiff contends that the Court should look to her qualifications and performance from before the events linked to her discharge, independent of the allegedly nondiscriminatory reasons for her discharge that are proffered by Defendant.

      Plaintiff has the right of it here. Both Wexler and Cline hold that "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." Wexler, 317 F.3d at 574, citing Cline, 206 F.3d at 660-61. Demasellis and Smith, the cases cited by Defendant, are neither binding on this Court nor do they compel a finding that Plaintiff here was not qualified. Those cases do not address employees being fired for subjective reasons,

-9-

like poor leadership, and instead focus on objective reasons for the termination, like an employee's verbal abuse of a patient directly in violation of the employment contract. See, e.g., DeMasellis, 2011 WL 5404268 at *15.  The standard for "qualified" in the context of employment discrimination should not be based on the subjective and arbitrary reasoning of the defendant employer because that can too easily mask discrimination.  See Wexler, 317 F.3d at 575.  Therefore, the Court will continue to apply the objective test set forth in Wexler to determine if Plaintiff was qualified for the position and will look to whether she has presented evidence that her qualifications were "at least equivalent to the minimum objective criteria required for employment in the relevant field...[such as her] education, experience in the relevant industry, and demonstrated possession of the required general skills. "  Id. at 576.

Applying the Wexler standard, the Court easily concludes that no reasonable juror could find that Plaintiff's years of experience in the industry, including several successful years working for Defendant, would not meet the "minimum objective criteria for employment in her field."  Therefore, Plaintiff has shown she was qualified for the position from which she was terminated and has established a prima facie case under the McDonnell Douglas framework.

### 2. Pretext

Because Plaintiff has established a prima facie case

-10-

under the McDonnell Douglas framework, the burden shifts to Defendant to present a legitimate business reason for Plaintiff's termination. McDonald v. Union Camp, 898 F.2d at 1160. Defendant's legitimate business reasons for Plaintiff's termination include that her supervisor, Ms. Chitwood, lost confidence in Plaintiff's leadership abilities because, inter alia, her stores suffered loss of sales and profitability, Plaintiff consistently failed to timely follow up on customer complaints, she exhibited a lack of responsiveness to accounting, and she failed to timely file financial documents (doc. 17). Defendant contends that Ms. Chitwood lost confidence in Plaintiff's credibility and that Plaintiff suffered from both a lack of communication and miscommunication.

Defendant has met its burden of producing a legitimate business reason for terminating Plaintiff. Thus, the burden shifts back to Plaintiff to proffer evidence sufficient for a reasonable jury to find, by a preponderance of evidence, that Defendant's reasons for her termination were mere pretext and that, but for her age, Plaintiff would not have been terminated. Gross, 557 U.S. at 176; McDonald v. Union Camp, 898 F.2d at 1160.

A plaintiff can show pretext in three ways. See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994). First, the plaintiff can show that the proffered reasons had no basis in fact. Manzer, 29 F.3d at 1083-84. This first type of showing consists of evidence that the proffered basis for the

plaintiff's adverse treatment never happened, _i.e._, that they were false. _Id._ Second, the plaintiff can show that the reasons given by the employer were insufficient to motivate discharge. _Id._ This second showing ordinarily consists of evidence that other similarly-situated individuals were more favorably treated. _Id._ Third, the plaintiff can show that the defendant's proffered reason did not actually motivate the adverse action. _Id._ In order to make this third type of showing, the plaintiff must introduce additional evidence of discrimination. (_Id._)

The Sixth Circuit has cautioned that courts should "avoid formalism" in the application of the _Manzer_ test, "lest one lose the forest for the trees." _Chen v. Dow Chem. Co._, 580 F.3d 394, 400, n. 4 (6th Cir. 2009). Pretext, the court observed, "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." _Id_.

To establish pretext under the second _Manzer_ prong, that similarly-situated individuals were more favorably treated, Plaintiff proffers testimony of members of Defendant's own management team—_i.e._, some of Plaintiff's coworkers, which Plaintiff contends show that Plaintiff was better qualified than Jay Swallow for the Director of Operations position. Plaintiff also proffers testimony that, she contends, shows that Mario Nocero, another younger man, was slated to be promoted to Market

Manager, despite being less qualified than Plaintiff.  In addition, Plaintiff offers evidence that she argues establishes a question as to the factual basis of Defendant's articulated reasons for her termination, which goes to Manzer's first prong.

Defendant replies, and this Court agrees, that none of these arguments taken individually or as a whole satisfies the standard set forth in Manzer or otherwise casts doubt on Defendant's reasons for terminating Plaintiff's employment. Plaintiff has simply failed to present evidence from which a reasonable jury could conclude that Defendant's proffered reasons for Plaintiff's termination were pretext for impermissible discrimination.

> **a. Plaintiff has failed to show that other similarly situated employees were treated more favorably.**

Plaintiff claims that "everyone in management who worked with and knew [her] believed her to be more qualified [than Jay Swallow]," and proffers testimony from her former co-workers to support her assertion that Defendant acted pretextually.  Three District Managers who worked with Plaintiff, Heather Pressler, Mario Nocero and Angela Hornsby, each claimed that they felt Plaintiff was more qualified for the Director of Operations position that Mr. Swallow eventually filled and that Plaintiff was treated less favorably than Mr. Swallow.  Plaintiff also points to her team member's testimony that she was "a thousand times more qualified [than Jay Swallow]" and that those working for her "would

lay down and die for her." (doc. 26).  In addition, Plaintiff contends that Ms. Chitwood intended to demote Plaintiff and replace her with Mr. Nocero, a younger man, as Market Manager.

Unfortunately, the evidence Plaintiff points to as support for her assertion that similarly situated younger men were treated more favorably than she was fails to do so.  First, to the extent Plaintiff relies on the opinions of her coworkers to show that she was better-qualified than Mr. Swallow for the promotion to Director of Operations, that opinion testimony is insufficient to show pretext.  As Defendant notes, federal courts have consistently held that a plaintiff's former coworkers' personal opinions of the plaintiff's past work performance fail to create a genuine issue of material fact.  See, e.g., Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124-1125 (7th Cir. 1994)("The mere submission of materials from a coworker or supervisor indicating that an employee's performance is satisfactory. . . does not create a material issue of fact"); and Hawkins v. Pepsico, Inc., 203 F.3d 274, 280 (4th Cir. 2000) ("Alleged opinions of [plaintiff's] coworkers as to her work qualifications are close to irrelevant."). See also, Gardner v. Wayne County, 520 F.Supp.2d 858, 864-865 (E.D. Mich 2007) ("Plaintiff has cited no case law supporting the proposition that a co-worker's opinion that Plaintiff was terminated based on her race constitutes direct evidence of race discrimination.").

The affidavits and testimony presented to establish

-14-

Plaintiff's qualifications and Mr. Swallow's comparative lack of qualifications are, essentially, speculation. Plaintiff has presented no evidence showing that Ms. Hornsby, Mr. Nocero or Ms. Pressler have any facts to support their assertions. For example, no evidence exists on the record that any of them had the opportunity to observe Mr. Swallow or to legitimately compare his abilities as a Market Manager to Plaintiff's abilities as a Market Manager or that any of them had any personal knowledge of Mr. Swallow's conduct or qualifications. Nor is there any evidence that any of them had access to Plaintiff's personnel file or were otherwise fully informed of the full range of her work as Market Manager. Absent specific facts, their testimony cannot serve to defeat summary judgment. See, e.g., Miller v. Alladin Temp-Rite, LLC, 72 Fed.Appx. 378, 380 (6th Cir. 2003).

At this stage in the process, Plaintiff must point to a genuine issue of fact as to whether Defendant's stated reasons for her termination were pretext for discrimination. Neither her perception nor her coworkers' perceptions of her performance speaks to that issue. At most, they simply reflect their personal opinions about Plaintiff's work, but the existence of differing opinions simply does not create a genuine dispute of material fact as to whether Defendant's stated reasons masked impermissible discrimination.

Plaintiff points the Court to Grace v. University of Cincinnati, No. 1:10-cv-315 (S.D. Ohio Aug. 19, 2011) as support

for her argument that an employer's subjective opinion about an employee's leadership abilities or credibility should be assessed by a jury. However, Grace is distinguishable from the instant case and does not compel a finding of pretext here. In Grace, the court held that the employer's subjective determination that the plaintiff was "in over his head" required the issue of pretext to go to the jury, noting that the defendant's "reliance on subjective factors is inscrutable and not subject [to] validation by any means except by judging her credibility." Id. at 15. Those "subjective factors" that the Grace court found required assessment by a jury were "intangible and amorphous qualities, such as his demeanor and his facial expressions during meetings." Id. at 14. Those qualities are quite unlike the leadership, credibility and communication qualities assessed and found deficient by Defendant in the instant case. In addition, the Grace court found important the fact that the evaluator in Grace was of a different race and gender than the plaintiff alleging discrimination on those bases. Here, both the evaluator, Ms. Chitwood, and Plaintiff are the same gender and roughly the same age. Further, in Grace, the employer had little chance to observe the plaintiff other than his demeanor in a few meetings over the course of a few months; this left a genuine dispute over the issue of pretext because of the short time frame. Here, Plaintiff worked for Defendant for several years, and Defendant's reasons for firing Plaintiff are well-established in the record and contain both subjective and objective reasons and

-16-

conclusions made over months and years.  <u>Grace</u> is simply inapposite.

Finally, even if she could show that Mr. Swallow and/or Mr. Nocero were more favorably treated, Plaintiff has failed to show that they were similarly-situated to her.  To qualify as similarly-situated, the plaintiff and the colleagues to whom she seeks to compare herself must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct.  <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 583 (6th Cir. 1992).  Defendant contends Mario Nocero does not qualify as a similarly-situated individual compared to Plaintiff (doc. 28). This Court agrees.  As Defendant notes, Mr. Nocero was a District Manager, whose duties, responsibilities, pay, and bonus potential were different from that of a Market Manager (<u>Id.</u>).  Thus, because they were not similarly situated, Mr. Nocero cannot properly be used as a comparator for Plaintiff to show that Defendant's decision to terminate her employment was pretext for discrimination.

As to Jay Swallow, Plaintiff has shown that they were both Market Managers, both reported to Ms. Chitwood, and Mr. Swallow was eventually promoted over Plaintiff.  However, Plaintiff has not presented any evidence showing that the two of them engaged in the same conduct but were treated differently.  That is, it is not enough to point to someone who held the same position.  A comparator must be more similar than that to be able to provide a

-17-

legitimate source from which discrimination may properly be inferred. Had Plaintiff produced, for example, evidence that Ms. Chitwood promoted Mr. Swallow ahead of Plaintiff despite finding Mr. Swallow's leadership and communication skills to be deficient, an inference of discrimination might be reasonable. But Plaintiff has not produced sufficient evidence of any performance deficiencies on the part of Mr. Swallow or that any difference in Defendant's treatment of these two was anything other than a business decision based on months and years of job performance. As discussed previously, even though Defendant's own management team thought she was "a thousand times more qualified," those opinions alone are simply insufficient to establish pretext. So, although Mr. Swallow and Plaintiff were both Market Managers, the fact that Plaintiff was terminated and Mr. Swallow promoted doesn't in and of itself establish pretext without some sort of evidence that they engaged in the same <u>conduct</u> and were treated differently.

> **b. Plaintiff has not shown that the basis of Defendant's articulated reasons for her termination are not based in fact.**

Plaintiff argues that a jury could find Ms. Chitwood and Ms. Bleuer incredible because of "misrepresentations about events material to this litigation" (doc. 26). Plaintiff then lists a number of facts she disputes regarding claims made by Ms. Chitwood and Ms. Bleuer (<u>Id.</u>). This is not enough to survive summary judgment. The standard, as set forth in <u>Manzer</u>, is that the plaintiff must show that the proffered reasons had no basis in

fact.  Manzer, 29 F.3d at 1083–84.  This consists of evidence that the proffered bases for the plaintiff's adverse treatment never happened, i.e., that they were false.  Id.  Plaintiff has not presented evidence that the reasons for her termination did not actually happen, only that a jury might not believe everything that Ms. Chitwood or Ms. Bleuer said.  While this might create a dispute as to, for example, whether Ms. Chitwood told Mr. Nocero that he was going to be promoted to Market Manager, it does not create a genuine dispute as to whether the reasons given for Plaintiff's termination were pretextual.  Because Plaintiff has presented no substantive evidence that the reasons for termination were false, her argument fails.

### c. Conclusion as to Plaintiff's Age Discrimination Claims

In short, Plaintiff has failed to create a genuine dispute of material fact with respect to whether Defendant honestly believed in its reasons for terminating Plaintiff's employment.  It is not enough that she simply allege a dispute over the facts on which her discharge was based, nor is it enough that she and some of her coworkers believe she was discriminated against.  Plaintiff needed to have "put forth evidence which demonstrates that [Defendant] did not 'honestly believe' in the proffered non-discriminatory reason[s]" for Plaintiff's termination. Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001).  To determine whether Defendant had an honest belief in its reasons, the Court asks whether Defendant made a reasonably informed and

-19-

considered decision before terminating Plaintiff's employment. <u>Id.</u> at 494.  Plaintiff has presented no evidence creating a genuine dispute about whether Defendant's decision was reasonably informed and considered.  Thus no reasonable juror could find that Plaintiff's termination was pretext for impermissible discrimination and that she would not have been terminated but-for her age.

**B.  Plaintiff's State and Federal Sex Discrimination Claims**

Plaintiff claims that Defendant violated Title VII and Ohio Revised Code §§ 4112.02(a) and 4112.99 by impermissibly discriminating against and treating her differently because of her sex (doc. 26).[3]  For the reasons discussed above, Plaintiff's sex discrimination claim cannot survive summary judgment: whether the alleged discrimination was on the basis of her age or her sex, she has failed to proffer evidence showing that Defendant's decision to terminate her employment was pretextual.

**C.  Plaintiff's Retaliation Claims**

To establish a <u>prima facie</u> case of retaliation, Plaintiff must show (1) that she engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) that

_____

[3] Chapter 4112.02 of the Ohio Revised Code prohibits an employer from terminating an employee on the basis of color, religion, sex, military status, national origin, disability, age or ancestry.  Ohio Rev. Code §4112.02.  Similar to age discrimination claims, state sex discrimination claims are generally construed in the same manner as federal laws because Ohio anti-discrimination laws prohibit the same conduct as Title VII. <u>See Shoemaker-Stephen v. Montgomery County Bd. of Com'rs</u>, 262 F.Supp.2d 866, 874 (S.D. Ohio 2003).

there is a causal link between the two.  <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53 (2006).

Defendant argues that Plaintiff's retaliation claims fail both because Plaintiff failed to establish that she engaged in a protected activity and because she failed to establish that a causal link existed between any protected activity and her termination.

Plaintiff claims she engaged in protected activity when she talked to Ms. Bleuer, the Director of Human Resources, after receiving the letter on May 25, 2010 from Ms. Chitwood that outlined a number of her concerns regarding Plaintiff's leadership skills, including as they related to resolving customer complaints (doc. 26).  Plaintiff claims to have told Ms. Bleuer she felt discriminated against and that "all of [her] team members were significantly younger and some [were] male" (doc. 26).  This, she asserts, was a complaint of discrimination and, thus, a protected activity.

Federal courts have generally held that "vague charges of discrimination" are "insufficient to constitute opposition to an unlawful employment practice," which is considered a protected activity.  <u>Booker v. Brown and Williams Tobacco Co.</u>, 879 F.2d 1304, 1313 (6th Cir. 1989).  "An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation

-21-

simply by an employee asserting a charge of discrimination." Id.

Here, Plaintiff's complaint is not sufficient to constitute "opposition" as defined in Booker. Her charge of discrimination is precisely what the Sixth Circuit has defined as a "vague charge of discrimination." As such, her complaint to Ms. Bleuer cannot be considered "protected activity."

Even if Plaintiff's complaint to Ms. Bleuer could properly be construed as protected activity, and even if she could be seen to have established a causal connection between that complaint and her termination, her retaliation claims fail for the same reasons as her age and sex discrimination claims fail: she has not shown that Defendant's reasons for her termination were pretextual. Consequently, Defendant has successfully shown that no genuine dispute of material fact exists with respect to whether Plaintiff was terminated in retaliation for engaging in a protected activity.

## IV. CONCLUSION

Plaintiff has failed to show that a reasonable jury could find that Defendant's actions were pretext for age or sex discrimination, or that she was retaliated against for engaging in protected activity. Consequently, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 17).

SO ORDERED.

Dated: August 14, 2012          s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge

-22-